KELLY P. RYAN ET AL., APPELLEES, V. BRIAN KOLTERMAN ET AL., APPELLANTS, SAM WRIGHT, JR., ET AL., APPELLEES.

338 N.W.2d 747

Filed September 30, 1983. No. 44547.

Brian Kolterman, pro se.

Michael J. Mooney of McCormack, Cooney, Mooney & Hillman, P.C., for appellees.

KRIVOSHA, C.J., HASTINGS, and CAPORALE, JJ., and DAVIS, D.J., and COLWELL, D.J., Retired.

DAVIS, D.J.

On November 19, 1979, the appellees Ryan, as sellers, and the appellants Kolterman, as buyers, entered into a contract for a sale of 17 acres of land, more or less, legal title to which was held by the Ryans, and which was improved by 4 acres of boat basin and creek, a 29-pad mobile home park, and a restaurant.

The buyers agreed to pay $280,650 for the real property and $6,350 for personal property, on terms of $50,000 down, $25,000 no later than September 1, 1980, monthly payments of $2,334.30 for 59 months, and the balance of $196,832.09 in one payment 60 months after the first installment became due.

The contract provided that the buyers could make improvements up to the amount of $100,000 without the prior consent of the sellers, it set forth the buyers' right to cure any default at the sellers' expense, and contained an acceleration clause. The deed from the buyers to the sellers was placed in escrow, to be delivered upon the final payment.

The buyers paid $47,500 at the time of closing, since then have paid a total of $9,000 in monthly installments, and were credited the net sum of $4,789 by the sellers, who operated the mobile home park and paid its expenses. No payments were made by the buyers under the contract after October 1, 1980.

The businesses on the property were operating at the time of sale, and it was the buyers' intention to continue their operation and to fulfill their contractual obligations from the income produced.

The evidence showed that the restaurant was closed on October 1, 1980. The marina was not operated during the year 1980, and at the time of trial the boat basin had silted to the degree that dredging

will be required to make it functional. The buyers have unsuccessfully attempted to secure loans and other financing arrangements to meet their obligations to the sellers.

Shortly after their occupancy, the buyers expended sums on reopening expenses totaling $24,038, which included $13,000 in remodeling the restaurant and $11,038 for the digging of a sewer. The sewer contractor was not paid in full by the buyers and has perfected a mechanic's lien on the property in the amount of $7,538. Other valid mechanics' liens total $1,325. The trial court properly found that these liens first attached to the equitable interest of the buyers, but if unpaid were decreed a statutory lien against the property, which was subject to sale in satisfaction.

The sellers brought an equitable action for strict enforcement of the contract of sale, the trial court granted this relief, and the buyers-appellants seek reversal on the grounds that a strict foreclosure was not justified by the evidence.

Mr. Kolterman admitted that the buyers have defaulted on the contract, and testified that at the time of trial they owed, by his reckoning, $255,000 on the contract of sale.

Mr. Kolterman testified, as an owner, that he valued the property at $330,000, without giving his reasons therefor.

An appraiser called on behalf of the buyers testified that while he customarily uses three approaches to valuing property, i.e., cost, market, and income, in this case the buyers offered him no income figures, and he did not use the market approach because in his opinion there had been no sales of comparable property. He testified that under the replacement cost less depreciation method of valuation, he arrived at a figure of $424,000, and depreciated all the assets, including the land, by an arbitrary factor of 20 percent to a present value of $339,000.

One of the sellers' licensed appraisers testified that the value of the land and trailer court was $75,000, and the restaurant and its contents were valued at $150,000, for a total of $225,000.

Another licensed appraiser testified on behalf of the sellers that the value of the property, using a synthesis of the cost less replacement value approach and the income approach, all recognized methods of valuation, was $165,000.

In an executory contract for the sale of real estate, where title has not passed, the vendor upon default by the vendee may treat the contract as an ordinary real estate mortgage and foreclose it as such. *Hendrix v. Barker*, 49 Neb. 369, 68 N.W. 531 (1896); *Jackson v. Phillips*, 57 Neb. 189, 77 N.W. 683 (1898); *First Nat. Bank of Falls City v. Edgar*, 65 Neb. 340, 91 N.W. 404 (1902). He may also bring an action on the contract of sale for strict foreclosure.

The effect of a strict foreclosure is to confirm in the seller his title to property by removing any lien or claim of lien upon it by the buyer. It is in the nature of a forfeiture, in that any sums paid by the buyer on the contract of sale are not reimbursed him.

Applications for strict foreclosure are addressed to the sound discretion of the court and are granted only when it would be inequitable to refuse them based upon the facts of the case before it. *Harrington v. Birdsell*, 38 Neb. 176, 56 N.W. 961 (1893); *Farmers & Merchants State Bank v. Thornburg*, 54 Neb. 782, 75 N.W. 45 (1898). Before the relief is granted it must be clear that the property is of less value than the amount due on the contract for its sale at the time of trial and that it would not bring a surplus over the amount due if a sale was ordered. *Swanson v. Madsen*, 145 Neb. 815, 18 N.W.2d 217 (1945).

At the time of trial the amount owed on the contract was, with interest, $262,624.22. The businesses from whose income the payments were to be

made by the buyers have not been operated since October 1, 1980. The buyers have not paid the taxes on the property or insured it, as was their obligation under the contract of sale. We note their appearance here is in forma pauperis.

Actions in equity on appeal to this court are triable de novo, subject, however, to the rule that when evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Masid v. First State Bank*, 213 Neb. 431, 329 N.W.2d 560 (1983); *Spilinek v. Spilinek*, 212 Neb. 811, 326 N.W.2d 170 (1982); *Kleager v. Schaneman*, 212 Neb. 333, 322 N.W.2d 659 (1982).

It is clear, on analyzing the evidence, that the amount due on the contract is greater than the value of the property and that upon sale it would not bring a surplus over the amount due under the contract of sale.

The trial court's order of strict foreclosure giving the appellants 20 days from the date of the entry of the decree to comply with the terms of the contract or be barred from all right, title, interest, and equity of redemption in the property was, under the facts of this case, an appropriate remedy that does not offend justice and equity. The appellants will comply with the terms of the contract of sale within 20 days of the date of filing of the mandate in this matter in the District Court.

AFFIRMED.